UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHAUDRY M. SHOUQ,<br>　*Plaintiff*, | )<br>)<br>) | 3:24-CV-00397 (KAD) |
| v. | )<br>) | |
| UBER TECHNOLOGIES, INC.,<br>　*Defendant*. | )<br>) | June 25, 2025 |

## ORDER COMPELLING ARBITRATION AND STAYING CASE
### RE: ECF No. 31

Kari A. Dooley, United States District Judge:

　　Plaintiff Chaudry M. Shouq ("Plaintiff" or "Shouq"), proceeding *pro se*, filed a form civil rights complaint against Defendant Uber Technologies, Inc. ("Defendant" or "Uber"), asserting discrimination on the basis of his race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.  By motion dated November 12, 2024, Defendant Uber seeks to compel arbitration and stay this action pending the same.  Mot. to Compel Arbitration ("Mot. to Compel"), ECF No. 31.  Plaintiff opposes the motion.  Pl.'s Opp'n, ECF No. 32.  For the reasons that follow, the motion to compel arbitration is GRANTED, and this matter is STAYED pending the same.

**Standard of Review**

　　The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The FAA embodies a national policy favoring arbitration founded upon a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, their disputes."  *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245,

250 (2d Cir. 2019) (quotation marks, alteration, and citation omitted). A party aggrieved by another party's failure or refusal to arbitrate may petition the district court for an order directing that arbitration commence in the manner provided for in the parties' agreement. 9 U.S.C. § 4. In deciding whether arbitration must be compelled, the Court applies a standard comparable to that applied on a motion for summary judgment. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) (citing *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). Thus, "[w]hile it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration." *Guida v. Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 613 n.2 (E.D.N.Y. 2011) (quotation marks and citations omitted).

**Allegations and Procedural History**

Chaudry Shouq is a man of Pakistani national origin. Compl., ECF No. 1, at 3. He began working as an Uber driver in Fall 2016. *Id.* He alleges that Uber discriminated against him "many times" during the seven years that he worked as a driver because of certain riders' behavior and attitudes towards him. *Id.* He does not provide the details of these incidents, but he lists several dates on which he was allegedly discriminated against on the basis of his race and national origin. *See id.* ("10/14/23, 10/16/23, 10/18/23, 01/22/23, 08/03/23, 10/05/23 and many more times I was discriminated [against] unfairly . . . ."). Shouq also alleges that Uber "falsely" deactivated his account temporarily twice in 2023: on January 22, 2023, his account was deactivated "on the basis of driving under the influence," and on August 3, 2023, it was deactivated "on the accusation of falling asleep while driving." *Id.* at 7. On October 5, 2023, Shouq was rear-ended by a "reckless driver." *Id.* Despite his long, "5 star" record with Uber, Shouq alleges that Uber deactivated his

account on October 14, 2023, because he "was not a safe driver without conducting a proper investigation." *Id.* at 3, 7. Two days later, on October 16, 2023, Shouq alleges that he was "wrongly accused of discriminatory remarks to [a] rider," after which, Uber permanently deactivated his Uber account "without any reason." *Id.* at 7.

Shouq filed charges with the U.S. Equal Employment Opportunity Commission (EEOC). *Id.* at 4. On January 22, 2024, the EEOC dismissed the charges because Shouq "w[as] not in an employment relationship with the Respondent." *Id.* at 8. The EEOC also issued a Notice of Right to Sue. *Id.*

On March 20, 2024, Plaintiff, proceeding *pro se*,[1] filed the Complaint. ECF No. 1. Uber appeared on October 3, 2024. ECF No. 25. On November 12, 2024, Uber filed the present Motion to Compel Arbitration, ECF No. 31, with an accompanying declaration and exhibits. *See* Chinchilla Decl., ECF No. 31-4. Plaintiff filed an opposition to the motion. ECF No. 32. Uber filed a reply, ECF No. 33, and Plaintiff thereafter filed a sur-reply, ECF No. 34, to which Uber did not object.

**The Arbitration Agreement**

Uber describes itself as a "technology company that develops proprietary software used to create digital marketplaces," one of which is "for consumers to connect with independent businesses offering transportation services ('Drivers'), known as the Rides marketplace." Chinchilla Decl. ¶ 4. In order for Drivers to sign up for the Uber app, they must create an account with a unique username and password, which can only be accessed via those login credentials. *Id.*

---

[1] "A *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Thus, "[a] court must liberally construe *pro se* pleadings and interpret them to raise the strongest arguments that they suggest." *Morgikian v. Fidelity Invs.*, No. 20-CV-5724 (JMA) (ARL), 2022 WL 836950, at *2 (E.D.N.Y. Mar. 21, 2022) (citing *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

¶ 6. After users activate their account, but before they can begin accepting trip requests through the app, they must review the applicable agreement provided by Uber. *Id.* ¶ 7. The agreement is presented on the app with a screen that states, "TERMS AND CONDITIONS," and tells users to "Please review and agree to the documents below." *Id.* Immediately below this text is a hyperlink to the applicable agreement, each with an arrow to the right of the name of the agreement. *Id.* New Drivers must first click "Yes, I agree" to the applicable agreement, and then click it again when the app asks, "Confirm that you have reviewed and agree to all the documents and contracts." *Id.* ¶¶ 7–8.

Attached to Uber's motion, by declaration, are the arbitration agreements Uber seeks to enforce. Uber avers that on or around July 10, 2016, Plaintiff signed up for an account and accepted the December 10, 2015 Rasier Technology Services Agreement. *Id.* ¶ 10(a); *see* Chinchilla Decl., Ex. 3, ECF No. 31-7. On or about January 8, 2022, Plaintiff accepted the January 6, 2020 Uber Platform Access Agreement. Chinchilla Decl. ¶ 10(b); *see* Chinchilla Decl., Ex. 4, ECF No. 31-8. Finally, on or about January 19, 2022, Plaintiff accepted the January 1, 2022 Rasier Platform Access Agreement (the "2022 Rasier PAA"). Chinchilla Decl. ¶ 10(c); *see* Chinchilla Decl., Ex. 5, ECF No. 31-9 ("2022 Rasier PAA"). Plaintiff does not dispute that he digitally accepted and entered into these three agreements.[2]

Section 13 of the 2022 Rasier PAA (the "Arbitration Provision") provides, in relevant part:

> This Arbitration Provision is a contract governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and evidences a transaction involving commerce, and you agree that this is not a contract of employment involving any class of workers engaged in foreign or interstate commerce within the meaning of Section 1 of the Federal Arbitration Act. . . . Except as it otherwise provides, this Arbitration Provision applies to any legal dispute, past, present or future, arising out of or related to your relationship with us or relationship with any of our agents,

---

[2] Further, Uber retains electronic records of each Driver's acceptance or non-acceptance of all agreements, to include date and time stamps. Uber provided the records it has for Shouq, which corroborates the dates and times that he accepted these agreements. Chinchilla Decl., Ex. 6, ECF No. 31-10 ("Uber Records").

> employees, executives, officers, investors, shareholders, affiliates, successors, assigns, subsidiaries, or parent companies (each of which may enforce this Arbitration Provision as third party beneficiaries), and termination of that relationship, and survives after the relationship terminates.
>
> This Arbitration Provision applies to all claims whether brought by you or us, except as provided below. This Arbitration Provision requires all such claims to be resolved only by an arbitrator through final and binding individual arbitration and not by way of court or jury trial.

2022 Rasier PAA § 13.1(a)–(b). The Arbitration Provision also contains a "Delegation Clause," purporting to delegate the authority to decide arbitrability to an arbitrator:

> Only an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Provision, including without limitation any claim that all or part of this Arbitration Provision is void or voidable. An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues.

*Id.* § 13.3(j). The Arbitration Provision "is not a mandatory condition" of Uber's terms and services; it allows Drivers to opt out of the Arbitration Provision within 30 days of executing the agreement by sending an email to optout@uber.com, stating their intent to opt out of the provision. *Id.* § 13.8(a); Chinchilla Decl. ¶ 11. Uber does not have any record of Shouq opting out of the Arbitration Provision, Chinchilla Decl. ¶¶ 13–14, and Plaintiff does not claim otherwise. Accordingly, Uber asserts that Plaintiff's claim is subject to the Arbitration Provision.

In response, Plaintiff generally argues that the Arbitration Provision is procedurally and substantively unconscionable; that the provision is impermissibly ambiguous; and that enforcement of the provision would be coercive and against public policy. Accordingly, Plaintiff argues, arbitration should not be compelled, and no stay should issue. *See* Pl.'s Opp'n, ECF No. 32, at 1–4.

**Discussion**

In determining whether to compel arbitration, the court must first consider "whether the parties agreed to arbitrate." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (internal quotation marks omitted). The FAA "embodies a national policy favoring arbitration," and therefore "the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Lok v. Experian Info. Sols., Inc.*, No. 21-CV-154 (NSR), 2022 WL 889215, at *1 (S.D.N.Y. Mar. 25, 2022) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)).

In addition, "[p]arties can include in the arbitration agreement a provision delegating the question of arbitrability to the arbitrator. This is usually called a 'delegation clause' or a 'delegation provision.'" *Davitashvili v. Grubhub Inc. ("Davitashvili II")*, 131 F.4th 109, 117 (2d Cir. 2025). "When parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Id.* (quotations omitted). Thus, "[i]f the Court is satisfied that an agreement to arbitrate has been formed, the Court must then determine whether the agreement clearly and unmistakably delegates to the arbitrator [the] issue of arbitrability." *Republic of Kazakhstan v. Chapman*, 585 F. Supp. 3d 597, 607 (S.D.N.Y. 2022). "But, '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Hastings v. Nifty Gateway, LLC*, 724 F. Supp. 3d 241, 247 (S.D.N.Y. 2024) (alteration in original) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

*Validity of Agreement to Arbitrate*

The threshold question is "whether the parties have indeed agreed to arbitrate." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). Whether the parties agreed to arbitrate is "determined by state contract law principles," *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016), although "traditional contract formation law does not vary meaningfully from state to state." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 702–03 (2d Cir. 2023). "[T]he party seeking . . . arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made."[3] *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) (quotation marks, citation, and alteration omitted). The burden then shifts to the non-moving party, who must "counter with at least '*some evidence* . . . to substantiate [his] denial' that an agreement had been made." *Id.* (emphasis in original) (quoting *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972)).

A valid, contractual arbitration agreement requires a voluntary offer, voluntary acceptance, and mutual consideration. *See Doctor's Assocs., Inc.*, 934 F.3d at 252 (collecting cases). Uber has satisfied its initial burden to show that a valid contract was formed when Plaintiff electronically received the 2022 Rasier PAA on or about January 19, 2022, and thereafter accepted that

---

[3] Before determining whether a binding agreement was formed between the parties, the Court must first determine what law to apply. The 2022 Rasier PAA contains a provision indicating that "this PAA is governed by the applicable law of the state where you reside . . . when you accepted this PAA (the 'Governing Law'). The Governing Law shall apply without reference to the choice-of-law principles that would result in the application of the laws of a different jurisdiction." 2022 Rasier PAA § 12.7. Plaintiff currently resides in the state of Connecticut, but there is no indication whether he was also a resident of Connecticut when he accepted the 2022 Rasier PAA. "Generally speaking, choice-of-law clauses have been applied to determine which state's law governs the validity of an arbitration agreement." *Errato v. Am. Express Co.*, No. 3:18-CV-1634 (VAB), 2019 WL 3997010, at *7 (D. Conn. Aug. 23, 2019) (citing *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 50 (2d Cir. 2004). Here, neither Plaintiff nor Uber addressed the 2022 Rasier PAA's choice-of-law provision in their briefing, and both parties simply assume that Connecticut law applies. *See, e.g.*, Mot. to Compel at 7 ("Under Connecticut law, a valid arbitration agreement requires a voluntary offer, voluntary acceptance, and support by mutual consideration."). Plaintiff does not object to Uber's invocation of Connecticut law. This implied consent, combined with Uber's reliance on Connecticut cases, is "sufficient to establish choice of law" regarding the acceptance of the agreement as having taken place in Connecticut. *See Schreiber v. Friedman*, No. 15-CV-6861 (CBA) (JO), 2017 WL 5564114, at *17 n.15 (E.D.N.Y. Mar. 31, 2017) (quoting *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)).

7

agreement by clicking, "Yes, I agree," on that same date. Further, Uber has established, and Plaintiff does not contest, that he did not opt out of the Arbitration Provision within 30 days, Chinchilla Decl. ¶¶ 2–3, 9–10, 13–14; *see* Uber Records. *See Christian v. Uber Techs., Inc.*, No. 24-CV-304 (EGS), 2025 WL 833130, at *7 (D.D.C. Mar. 17, 2025) (finding valid arbitration agreement formed between driver-plaintiff and Uber).

Plaintiff does not contest that he accepted the 2022 Rasier PAA. Nor does he contest that he did not opt out of the Arbitration Provision. Rather, in his sur-reply, Plaintiff argues that the "clickwrap" agreement used by Uber impermissibly buried the Arbitration Provision, such that his clicking the "Yes, I agree," button did not constitute a knowing and voluntary acceptance. Pl.'s Sur-Reply at 2–4. This argument has been rejected by numerous courts in this Circuit and across the country, each of which have held that Uber's clickwrap agreements to arbitrate are not so confusing or hidden that a reasonable person would not have inquiry notice of the arbitration agreement. *See Christian*, 2025 WL 833130, at *5; *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76–78 (2d Cir. 2017) (holding that Uber clickwrap agreement provided inquiry notice to drivers of arbitration agreement); *Davitashvili v. Grubhub Inc. ("Davitashvili I")*, No. 20-CV-3000 (LAK), 2023 WL 2537777, at *9 (S.D.N.Y. Mar. 16, 2023) (same), *aff'd in part, rev'd in part*, 131 F.4th 109 (2d Cir. 2025). The Arbitration Provision is similarly conspicuous and identified by a visible hyperlink, such that Plaintiff was on inquiry notice of the agreement. *See* Chinchilla Decl. ¶ 7.

Plaintiff also argues that his limited English proficiency—and the failure of Uber to translate the 2022 Rasier PAA into other languages—weighs against contract formation. Pl.'s Sur-Reply at 3. However, as another court in this Circuit held, "[w]hile the Court is sympathetic to Plaintiffs' argument that their assent was not informed because they were unable to read the Services Agreement, which was provided solely in English, the Court is bound by clearly

8

established law holding that failure to read a contract is not a defense to contract formation." *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 49–50 (E.D.N.Y. 2017) (footnote omitted) (collecting cases).  This is true under Connecticut law as well.  *See Larobina v. Altice Media Sols., LLC*, 229 Conn. App. 791, 802 (2024) ("The general rule is that where a person [who is] of mature years and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is [that person's] duty to read it and notice of its contents will be imputed to [that person] if [that person] negligently fails to do so." (quotation omitted)).[4]

Thus, Plaintiff's receipt and acceptance of the 2022 Rasier PAA and the Arbitration Provision contained therein constitutes a valid agreement to arbitrate.

### *The Delegation Clause*

Having determined that the parties agreed to arbitrate, the Court turns to whether the 2022 Rasier PAA "clearly and unmistakably delegates to the arbitrator [the] issue of arbitrability." *Chapman*, 585 F. Supp. 3d at 607.  Section 13.3(j) of the 2022 Rasier PAA provides, in relevant part, "*Only an arbitrator*, and not any federal, state, or local court or agency, s*hall have exclusive authority to resolve any dispute* arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Provision."  2022 Rasier PAA § 13.3(j) (emphases added).  This clause goes on to state explicitly: "An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues."  *Id.*

Recently, the Second Circuit upheld a district court's finding that this precise language in Uber's arbitration clause demonstrated "clear and unmistakable evidence" that the parties intended to arbitrate arbitrability.  *Davitashvili II*, 131 F.4th at 118; *see Davitashvili I*, 2023 WL 2537777,

---

[4] Plaintiff's sur-reply also makes a plethora of other arguments regarding procedural and substantive unconscionability, as well as the public policy justifications against arbitration.  These are all enforceability issues that, because of the Delegation Clause, *see infra* at pp. 9–11, must be adjudicated by the arbitrator.  Plaintiff may certainly renew these arguments in arbitration, but the Court does not opine upon them here.

at *9.  There, the district court had held that "[t]his language clearly and unmistakably provides that 'all threshold arbitrability issues,' including issues of contract formation or unconscionability, will be decided by an arbitrator."  *Davitashvili I*, 2023 WL 2537777, at *9.  In affirming that holding, the Second Circuit also held that a general challenge to compelled arbitration by the plaintiff was not sufficient or specific enough to defeat Uber's valid delegation clause.  *Davitashvili II*, 131 F.4th at 118 ("Plaintiffs argue that arbitration in general would be unconscionable.  Our precedents require something more: Plaintiffs must show why allowing an arbitrator—as opposed to a court—to decide the question of arbitrability would be unconscionable.").

*Davitashvili* applies equally to the Delegation Clause in this case.  Although the agreement at issue in *Davitashvili* was not the 2022 Rasier PAA—the *Davitashvili* plaintiff had accepted Uber's terms and conditions from December 2021—the language of the delegation clauses at issue is identical.  *Davitashvili I*, 2023 WL 2537777, at *9.  And Plaintiff has not lodged a specific attack on the Delegation Clause itself: like the *Davitashvili* plaintiff, he has only argued that the Arbitration Provision as a whole is unconscionable or coercive, which is not sufficient to invalidate a binding Delegation Clause.  *See Davitashvili II*, 131 F.4th at 118–19.

Although Defendant did not invoke the Delegation Clause in its briefing, a party's failure to invoke such a clause does not constitute a waiver of the clause's enforcement.  *Flores v. Nat'l Football League*, 658 F. Supp. 3d 198, 211–12 (S.D.N.Y. 2023) ("[T]he fact that Defendants failed to raise the issue of the delegation clause for nearly eight months after their opening brief was filed (and then only when prompted by the Court) does not waive their right to enforce the delegation clause when no other substantive litigation has occurred."); *see also Christian v. Uber Techs., Inc.*, No. 24-CV-304 (EGS), 2025 WL 833130, at *7 (D.D.C. Mar. 17, 2025) (finding same Uber

10

delegation clause enforceable where Uber did not raise the clause in its briefing). "Furthermore, 'any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration,' including 'allegation of waiver . . . .'" *Flores*, 658 F. Supp. 3d at 212 (quoting *Moses H. Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).  Thus, having found that there is a binding arbitration agreement and a binding delegation clause, the Court does not address Plaintiff's arguments that the Arbitration Provision as a whole is unconscionable, "or any other applicable contract defense," as the power to adjudicate those issues has been delegated to the arbitrator.  *See id.* at 211 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 73–75 (2010)).

### *Stay of Proceedings*

Defendant also requests that this action be stayed pending arbitration.  Mot. to Compel at 10.  Plaintiff does not address the application for a stay in his opposition.  Pursuant to 9 U.S.C. § 3, a district court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . ., *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3 (emphasis added).  "When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration," a stay is mandatory.  *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024).

**Conclusion**

The motion to compel arbitration and to stay all proceedings pending arbitration is GRANTED.  These proceedings are hereby STAYED pursuant to 9 U.S.C. § 3.  The parties are directed to file a joint status report within 30 days of the issuance of a decision by the arbitrator.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of June, 2025.

                                           */s/ Kari A. Dooley*
                                          KARI A. DOOLEY
                                          UNITED STATES DISTRICT JUDGE